**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MOHAMMED ABDUL RASHEED QURAISHI,** | ) | **Cr. No. 04-10345-NMG** |
| **MOHAMMED ABDUL QAYIUM QURAISHI and** | ) | |
| **MOHAMMED ABDUL AZIZ QURAISHI** | ) | |
| | ) | |

**GOVERNMENT'S MOTION TO REFUND EXPENSES**

The United States of America, by Assistant U.S. Attorney Kimberly West, respectfully request this Court to order the defendants to refund the Bureau of Prisons ("BOP") $20,451.98 for costs associated with the defendants' escorted trip from Big Spring, Texas to Massachusetts to see their dying mother. See Attachment A, Declaration of Galen Montanye. As the basis for this request, the government submits that BOP's insistence that escorts be used during the trip was not unreasonable in light of the defendants deportable status and the potential that the defendants would not return to BOP if they were allowed to go on the trip unescorted.

On December 28, 2007, the defendants filed an Emergency Motion for Early Release or, in the Alternative, for Temporary Release from BOP custody due to their mother's impending death.[1] The government assented to the defendants' temporary release. On the same day, this Court denied the defendant's request for early release, but granted their request for temporary release:

> Emergency motion for early release is denied; emergency motion for temporary release is allowed for a period not to exceed four (4) days and provided that, upon temporary release from Bureau of Prisons custody,

---

[1] Their mother ultimately passed away on/about February 4, 2008.

defendants shall, at their own expense, proceed forthwith to Massachusetts and return to the designated Bureau of Prisons facility within the allotted time of release.

On January 3, 2008, the defendants filed an Emergency Motion to Compel Enforcement of this Court's Order and for Contempt because BOP had not released the defendants. At the hearing on the same day, the Court inquired whether the defendants had requested their temporary release from BOP pursuant to BOP procedures. Although counsel indicted that "[f]or the past several months we've been also trying to work with the prison to file a request within the prison so that we can go that route," their request was not in fact filed until January 3, 2008, the day of the hearing. (Tr. p.5, January 3, 2008) and see Attachment B. In addition, the government acknowledged that it had mistakenly understood that the Court had jurisdiction under 18 U.S.C. § 3622 and had thereby given its assent to the request for temporary release. (Tr. p. 9, January 3, 2008).

Notwithstanding, BOP agreed to have the defendants in Boston by Saturday, January 5, 2008, within 48 hours of the hearing before the Court. BOP also agreed to remain outside the defendants' mother's room while the defendants visited and agreed not to handcuff the defendants in their mother's presence.[2] Over the course of the next few days and subsequent hearings, BOP also agreed to extend the number of hours the defendants could spend with their mother daily, to notify the defendants immediately if their mother's condition deteriorated, to bring the defendants to their mother immediately to administer her last rites and to move the defendants to a closer facility to her hospital so they could spend more time with her.

---

[2] Although these provisions are noted in the Court's January 8, 2008 Order, BOP agreed to their implementation beforehand.

On January 8, 2008, the defendants filed a Motion to Extend Massachusetts Visit requesting that they be permitted to extend their release until two days following the death of their mother. (Their mother ultimately passed away almost one month later.) The government opposed the motion. At the hearing on January 9, 2008, the Court offered to order BOP to keep the defendants in Massachusetts until the following Tuesday, a total of six additional days, if the defendant paid $7500 up front to cover their own costs associated with the trip as order by the original December 28, 2007 order.

The defendants declined to pay the $7500. Consequently, they visited their mother for two more days instead of the additional five days the court had suggested. During the hearing, the Court noted, not for the first time, that Aziz Quraishi's presentencing report indicated that his net value was over $500,000. See Attachment C, ¶ ¶ 83-85.

**A. BOP's decision to use escorts was not unreasonable and the defendants should pay for the escorts' expense.**

In recognition that the defendants represented a risk of flight, the parties came to an agreement regarding their initial release at the beginning of the litigation of the underlying criminal case: in December 2004, Qayium Quraishi was released on a $250,000 unsecured bond with electronic monitoring (in October 2005 the electronic monitoring was removed), and Aziz Quraishi was released on a $250,000 secured bond. However, now that both defendants have been convicted, they face almost certain deportation to India. Indeed, Qaiyum Quraishi requested a stipulated order of removal from the United States in May 2007 before he was placed in BOP custody. See Attachment D. As a result, once Qaiyum Quraishi is released from BOP custody on March 10, 2008, he will be placed into ICE custody and will be removed without a hearing.

Aziz Quraishi's immigration hearing is scheduled for March 10, 2008, the day of his release from BOP custody. His crime of conviction, 18 U.S.C. 1324(a)(1)(A)(iv), encouraging and inducing aliens to come to, and reside in the United States, is an aggravated felony. See 8 U.S.C. 1101(a)(43)(N). Consequently, Aziz is deportable and enjoys very few avenues of relief from removal. For example, as a felon convicted of an aggravated felony, he is ineligible to apply for asylum. See 8 U.S.C. 1158(b)(2)(A)(ii) and 1158(b)(2)(B)(i). However, Aziz might avoid removal if he could show that his life would be threatened in his home country because of his race, religion, nationality, membership in a particular political group or his political opinion. See 8 U.S.C. 1231(b)(3)(A). This is theory of relief would unlikely be unsuccessful for Aziz as one of his brothers has already been removed to India[3] and his other brother, Qayium, voluntarily stipulated to removal to India. There is no information suggesting that Aziz is uniquely situated in this regard from his brothers.

Finally, the only other avenue of relief from removal is if Aziz could qualify under the Convention Against Torture by showing that he would be tortured if removed to his home country. See 8 C.F.R. 208.16(c)(2). Again, this is also an unlikely claim.

Both defendants represented risks of flights due to their impending removal from the United States and BOP was not unreasonable in its insistence on the use of escorts during the defendants' trip to see their mother. Had the defendants processed their request properly pursuant to BOP's policy, they would not have even been considered for a non-escorted trip. As deportable aliens, the defendants were classified as "In" custody inmates. "In" custody inmates are not eligible for unescorted trips outside the BOP facility because of the higher likelihood of

---

[3] Rasheed Quraishi was deported on February 7, 2008.

escape as compared to inmates who are not deportable aliens. See Program Statement 5280.08, Furloughs.

Once it was clear that although the defendants had not made their request through the proper channels but were suffering from a serious family crisis, BOP responded quickly and generously. Considering the serious risk of flight the defendants presented, it was not unreasonable for BOP to insist on escorted trips. Furthermore, BOP's request for reimbursement is not inconsistent with the spirit of the original court order and reasonable under the circumstances.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Kimberly P. West
KIMBERLY P. WEST
Assistant U.S. Attorney

DATE: January 15, 2008

CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kimberly P. West
Kimberly P. West
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. )
)
MOHAMMED ABDUL RASHEED QURAISHI, MOHAMMED ABDUL QAYIUM QURAISHI, MOHAMMED ABDUL AZIZ QURAISHI )
)
Defendants )

Cr. No. 04-10345-MLW

**DECLARATION OF GALEN MONTANYE**

I, Galen Montanye, hereby declare and state the following:

1. I am the Assistant Comptroller of the South Central Region of the Federal Bureau of Prisons. I have held this position since November 2002. I have been employed with the Federal Bureau of Prisons (BOP) since June 1990. As the Assistant Comptroller for the South Central Region of the BOP I am responsible for the oversight of 17 institution business offices throughout Texas, Oklahoma, New Mexico, Arkansas, and Louisiana.

2. I am familiar with the court ordered bedside visits that inmates Mohammed Abdul Aziz Quraishi, Register Number 80471-038, and Mohammed Abdul Qayium Quraishi, Register Number 80470-038, had in the Boston, Massachusetts area from January 5, 2008 through January 13, 2008. I have computed costs incurred by the BOP as a result of this trip based upon receipts and other

financial documents compiled by BOP staff.

3. The costs attributable to BOP escorts that were provided for the Quraishis' trip from the Federal Correctional Institution (FCI) at Big Spring, Texas to Boston, Massachusetts are as follows:

| | | |
|---|---|---|
| A. | Staff Airfare[1] | $4,203.00 |
| B. | Mileage Expenses[2] | $538.66 |
| C. | Per Diem and Other Expenses Related to Staff Travel[3] | $3,881.00 |
| D. | Salaries[4] | $11,829.32 |
| Total Costs: | | $20,451.98 |

4. The above calculations account for all escort expenses

---

[1] This consists of the cost of the airline tickets of the three FCI Big Spring escorting staff members. The costs of the Quraishis' airfare is excluded from the calculations articulated in this declaration.

[2] This figure represents the costs associated with the ground transportation of the Quraishis and escorting staff members.

[3] This particular calculation is impacted by the one-day return trip delay caused by airline policy concerning inmate transportation and seat availability.

[4] This figure accounts for staff salary time used for the escorted trip. This includes the salaries for the three escorting staff members from FCI Big Spring, as well as the salary costs for staff members from the Federal Medical Center at Devens, Massachusetts that assisted with escort duties and transportation of the Quraishis while they were in Massachusetts.

resulting from the Quraishis' bedside visit as ordered by the court. For bedside visits authorized and conducted pursuant to BOP policies and procedures, the subject inmates are not responsible for staff salary expenses for the first eight hours of each day. See 28 C.F.R. § 570.42. Accordingly, if agency officials would have approved a bedside escorted trip of this exact magnitude, despite this trip's duration, the escort costs responsible to the inmates would have been $13,819.02, with the government retaining responsibility for the first eight hours of staff salary time for each day.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 5th day of February 2008 in Dallas, Texas.

Galen Montanye
Assistant Comptroller
South Central Regional Office
Federal Bureau of Prisons
Dallas, Texas

# CORNELL COMPANIES, INC.

{ } Airpark { } Cedar Hill {X} Flightline { } Interstate

## INMATE REQUEST TO A STAFF MEMBER
## PETICION DE INTERNOS PARA UN MIEMBRO INSTITUCIONAL

RECEIVED JAN 0 3 2007

TO/PARA: Mr. Adrian Zarate
(NAME AND TITLE OF OFFICER/NOMBRE Y TITULO DEL OFFICIAL)

SUBJECT: STATE, COMPLETELY, BUT BRIEFLY, THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE, AND WHAT YOU THINK SHOULD BE DONE. (GIVE DETAILS)

RAZON: ESTIPULE COMPLETO PERO BREVEMENTE EL PROBLEMA CON EL CUAL DESEA ASSISTANCIA Y LO QUE DEBE SER HECHO. (DAR DETALLES)

Respected Sir,
This is to inform you that my Mother is in a critical Position, suffering from cancer. She is in her last days of life. I request you pleasure to kindly grant me Furlough under Programme Statement 5250.08 so that I can visit her. According to our religion, we have to perform the Funeral activity also. So I request you to grant me one week's time to visit my Mother, as she is in her very last days of life. Please take the dicision immidiately and grant me permission. I will be very greatful to you

(USE OTHER SIDE OF PAGE IF MORE SPACE IS NEEDED.)
(USE EL ATRO LADO DE LA HOJA IS MAS ESPACIO ES NECESITADO.)

NAME/NOMBRE: MOHAMMED ABDUL QAIYUM QURAISHI No./Numero: 80470-038

WORK ASSIGNMENT/ASIGNACION DE TRABAJO: N/O UNIT/UNIDAD: R [F13M-084L

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.
NOTA: Si usted sigue las instrucciones en preparar su peticion, puede ser dispuesta mas rapida y inteligentemente. Usted sera entrevistado si es necesario para poder manejar su peticion satisfactoriamente. Su negligencia en declarar su problema especificamente puede resultar en que no se tome alguna accion.

DISPOSITION: (DO NOT WRITE IN THIS SPACE) DATE/FECHA:
DISPOSICION: (NO ESCRIBA EN ESTE ESPACIO)

Officer/Official

COPOUT FORM

RECEIVED JAN 0 3 2007

# CORNELL CORRECTIONS

Flightline Unit

## INMATE REQUEST TO A STAFF MEMBER

## PETICION DE INTERNOS PARA UN MIEMBRO INSTITUCIONAL

TO/PARA: Mr. Adrian Zarate.
(NAME AND TITLE OF OFFICER/NOMBRE Y TITULO DEL OFFICIAL)

SUBJECT: STATE, COMPLETELY, BUT BRIEFLY, THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE, AND WHAT YOU THINK SHOULD BE DONE. (GIVE DETAILS)

RAZON: ESTIPULE COMPLETO PERO BREVEMENTE EL PROBLEMA CON EL CUAL DESEA ASSISTANCIA Y LO QUE DEBE SER HECHO. (DAR DETALLES)

I am writing this cop out to inform you that my mother is terminally ill from Cancer and is in her last few days. I request you to grant me furlough under program statement 5250.08 so that I can visit her. I am requesting you to grant me a week's time so that I can perform the last rites as well as see her alive. Please treat this urgently and grant me permission. I have also written a copy to Mr Tapia seperately.

(USE OTHER SIDE OF PAGE IF MORE SPACE IS NEEDED.)
(USE EL ATRO LADO DE LA HOJA IS MAS ESPACIO ES NECESITADO.)

NAME/NOMBRE: Mohammad Abdul Aziz Qureishi No./Numero: 80471-038.

UNIT/UNIDAD: R [F137-083L]

WORK ASSIGNMENT/ASIGNACION DE TRABAJO: ____________

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

NOTA: Si usted sigue las instrucciones en preparar su peticion, puede ser dispuesta mas rapida y inteligentemente. Usted sera entrevistado si es necesario para poder manejar su peticion satisfactoriamente. Su negligencia en declarar su problema especificamente puede resultar en que no se tome alguna accion.

DATE/FECHA: ____________

DISPOSITION: (DO NOT WRITE IN THIS SPACE)
DISPOSICION: (NO ESCRIBA EN ESTE ESPACIO)

(Official



(81) Quraishi reports that he has never collected unemployment or social security benefits.

**Financial Condition - Ability to Pay**

(82) The following information regarding the financial status of the defendant was obtained from the financial statement submitted by the defendant.

(83) The financial statement requests that the defendant provide the Probation Office with information regarding individual assets and liabilities as well as the assets and liabilities which the defendant holds jointly with a spouse or significant other, the assets and liabilities which are held by the defendant's spouse or significant other, and the assets and liabilities of the defendant's dependents of which the defendant enjoys the benefit or to which the defendant makes occasional contributions. These items are identified as follows: Individual "(I)"; Joint "(J)"; Spouse/Significant Other "(S)"; and Dependent "(D)". The necessary family expenses are those of the entire family unit.

**NET WORTH ANALYSIS**

ASSETS

Bank Accounts

(J) Checking Account — $ 35,000

Motor Vehicle

(I) 2001 Mitsubishi Monteiro — $ 8,000
(S) 2006 Mercedes C280 — $ 32,500

Real Estate

38 Kevin Clancy Way in Stoughton, MA — $401,758
Fair Market Value: $600,000
Mortgage Balance: $198,242
Equity: $401,756

Real Estate (Subject to Forfeiture)

80 Walnut Street #401 in Canton, MA — $117,241
Fair Market Value: $200,000
Mortgage Balance: $82,759
Equity: $117,041

Other Assets

Jewelry — $ 3,000

Total Assets: $597,499

LIABILITIES

(84) The defendant reports that his only liabilities are the two mortgages which have already been included above to determine the equity of his home.

(85) A check of the defendant's credit history reveals that the defendant's only two open and active accounts are his mortgages.

| | |
|---|---|
| Total Liabilities: | $0 |
| **NET WORTH:** | **$597,499** |

**CASH FLOW ANALYSIS**

| MONTHLY CASH INFLOW | |
|---|---|
| Defendant's Monthly Net Income | $3,835 |
| Spouse's Monthly Net Income | $2,977 |
| Total Monthly Cash Inflow: | $6,812 |

| NECESSARY MONTHLY CASH OUTFLOW | |
|---|---|
| Mortgage #1 | $2,541 |
| Mortgage #2 | $ 648 |
| Groceries/Incidentals (Family of 7) | $ 306 |
| Electric | $ 264 |
| Heating Gas | $ 575 |
| Clothing | $ 24 |
| Telephone | $ 65 |
| Internet | $ 41 |
| Medical | $ 200 |
| Total Necessary Monthly Cash Outflow: | $4,664 |
| **TOTAL MONTHLY CASH FLOW:** | **$2,148** |

(86) Note: Documentation for the below-indicated expenses has not been received. As such, the following reported expenses have not been included in the financial analysis:

| | |
|---|---|
| Groceries/Incidentals (Family of 7) | $1,194 |
| Water/Sewer | $ 42 |
| Transportation (Fuel and Auto Maintenance) | $ 250 |
| Auto Insurance | $ 140 |
| Homeowner Insurance | $ 125 |
| Clothing | $ 176 |
| Other | $ 293 |

UNITED STATES IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA 02203-0002

STIPULATED ORDER

IN THE REMOVAL CASE OF
QURAISHI, MOHAMMED ABDUL QAIYUM
RESPONDENT

CASE NO.: A95-440-130

ORDERS

[X] This is a memorandum of the Court's Decision and Orders entered on June 1, 2007. This memorandum is solely for the convenience of the parties. The ~~oral~~ written Findings, Decision and Orders are ~~is~~ the official opinion in this case. (X) Both parties waived issuance of a formal oral decision in the case.

[X] The respondent was ordered REMOVED from the United States to INDIA ( ) in absentia.

[ ] Respondent's application for VOLUNTARY DEPARTURE was DENIED and respondent was ordered removed to ______________, in the alternative to ______________.

[ ] Respondent's application for VOLUNTARY DEPARTURE was GRANTED until ______________, upon posting a voluntary departure bond in the amount of $__________ to INS within five business days from the date of this Order, with an alternate Order of removal to ______________ or ______________. Respondent shall present to INS within ( ) thirty days ( ) sixty days from the date of this Order, all necessary travel documents for voluntary departure.

[ ] Respondent's application for ASYLUM was ( ) granted ( ) denied ( ) withdrawn with prejudice.
( ) subject to the ANNUAL CAP under the INA section 207(a)(5).
( ) Respondent knowingly filed a FRIVOLOUS asylum application.

[ ] Respondent's application for WITHHOLDING of removal under INA section 241(b)(3) was ( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for WITHHOLDING of removal under the Torture Convention was ( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for DEFERRAL of removal under the Torture Convention was ( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for CANCELLATION of removal under section ( ) 203(b) of NACARA, ( ) 240A(a) ( ) 240A(b)(1) ( ) 240A(b)(2) of the INA, was ( ) granted ( ) denied ( ) withdrawn with prejudice. If granted, it was ordered that the INS issue all appropriate documents necessary to give effect to this Order. Respondent ( ) is ( ) is not subject to the ANNUAL CAP under INA section 240A(e).

[ ] Respondent's application for a WAIVER under the INA section ______________ was ( ) granted ( ) denied ( ) withdrawn or ( ) other ______________. ( ) The conditions imposed by INA section 216 on the respondent's permanent resident status were removed.

[ ] Respondent's application for ADJUSTMENT of status under section ______________ of the ( ) INA ( ) NACARA ( ) ______________ was ( ) granted ( ) denied ( ) withdrawn with prejudice. If granted, it was ordered that INS issue all appropriate documents necessary to give effect to this Order.

NLC

CASE NUMBER: 95-440-130 RESPONDENT: QURAISHI, MOHAMMED ABDUL QAIYUM

[ ] Respondent's status was RESCINDED pursuant to the INA section 246.

[ ] Respondent's motion to WITHDRAW his application for admission was ( ) granted ( ) denied. If the respondent fails to abide by any of the conditions directed by the district director of INS, then the alternate Order of removal shall become immediately effective without further notice or proceedings: the respondent shall be removed from the United States to __________.

[ ] Respondent was ADMITTED as a __________ until __________. As a condition of admission, the respondent was ordered to post a $ __________ bond.

[ ] Case was ( ) TERMINATED ( ) with ( ) without prejudice ( ) ADMINISTRATIVELY CLOSED.

[ ] Respondent was orally advised of the LIMITATION on discretionary relief and consequences for failure to depart as ordered.

[ ] If you fail to voluntarily depart when and as required, you shall be subject to civil money penalty of at least $1,000, but not more than $5,000, and be ineligible for a period of 10 years for any further relief under INA sections 240A, 240B, 245, and 248 (INA Section 240B(d)).

[ ] If you are under a final order of removal, and if you willfully fail or refuse to 1) depart when and as required, 2) make timely application in good faith for any documents necessary for departure, or 3) present yourself for removal at the time and place required, or, if you conspire to or take any action designed to prevent or hamper your departure, you shall be subject to civil money penalty of up to $500 for each day under such violation. (INA section 274D(a)). If you are removable pursuant to INA 237(a), then you shall further be fined and/or imprisoned for up to 10 years. (INA section 243(a)(1)).

[X] Other: The Respondent, through Counsel, has entered into a stipulated order pursuant to 8 CFR 1003.25(b). See stipulated request for removal at Exhibit 1A. This Court has reviewed the record of proceedings and is familiar with that record.

Date: May 29, 2007

MATTHEW J. D'ANGELO, Judge

APPEAL: (X) waived ( ) reserved by ( ) Respondent ( ) INS (X) Both

DUE BY:

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: [ ✓ ] MAIL [ ] PERSONAL SERVICE
TO: [ ✓ ] INS [ ] ALIEN [ ] Alien's ATT/REP [ ] ALIEN c/o Custodial Officer
DATE: 6/5/07 BY: [ ✓ ] COURT STAFF [ ] JUDGE NC

Y2
Y2

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**OFFICE OF THE IMMIGRATION JUDGE**
**BOSTON, MASSACHUSETTS**

---

IN THE MATTER OF:

**Mohammed Abdul Qaiyum QURAISHI**
**AKA, Mohammed A. QURAISHI; Mohammed A. Q. QURAISHI; Mohd Abdul QURAISHI; Farees**

IN REMOVAL PROCEEDINGS
FILE NO. **A95 440 130**

---

**CHARGES:** Section(s) **237 (a) (1) (C) (i)** of the Immigration and Nationality Act

**RELIEF APPLICATION:** None

ON BEHALF OF RESPONDENT:

Daniel P. Harrington, Esq.
171 Milk Street
Suite 24
Boston, MA 02109

ON BEHALF OF SERVICE:

Helen Moore
Assistant Chief Counsel

**DECISION AND ORDER OF THE IMMIGRATION JUDGE**

Pursuant to the Notice to Appear issued on June 25, 2004, the respondent is charged with being removable as indicated above. The respondent has submitted a statement wherein he/she waives a personal hearing before the Immigration Judge, and admits the truthfulness of the allegations and the charges contained in the Notice to Appear. The respondent concedes that he/she is ineligible for or has made no application for relief from removal proceedings, which would allow him/her to remain in the United States, but instead requests issuance of an order by this Court for his/her removal to the country of **INDIA**. The U.S. Immigration and Customs Enforcement concur with the request.

A stipulated order shall constitute a conclusive determination of the alien's removability from the United States. Based upon the respondent's admissions, the charges of removal are sustained by evidence that is clear and convincing. The parties have waived appeal.

Accordingly, the following Order shall be entered:

ORDER: IT IS HEREBY ORDERED that the respondent be REMOVED from the United States to **INDIA** on the charges contained in the Notice to Appear.

JUN 0 1 2007

**Date**

**Immigration Judge**
Judge Matthew J. D'Angelo